# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA

| | |
|---|---|
| AMY PARSONS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CIVIL ACTION NO. |
| ) | _____ |
| LIFE INSURANCE COMPANY OF ) | |
| NORTH AMERICA, ) | |
| ) | |
| Defendant. ) | |

## COMPLAINT

Plaintiff Amy Parsons ("Plaintiff") brings this action for violations of the Employee Retirement Income Security Act of 1974 committed by Life Insurance Company of North America (hereafter "LINA"), in connection with the provision of ERISA-governed disability benefits under an Accidental Death Plan sponsored by the Carr Allison law firm. In support of the relief requested herein, Plaintiff alleges the following upon personal knowledge as to herself and as to all other matters upon information and belief based upon, *inter alia*, the investigation made by and through her attorneys:

## INTRODUCTORY STATEMENT

1.  This is an action for legal and equitable relief seeking redress of violations of the Employee Retirement Income Security Act (hereinafter referred to as "ERISA"). This suit is brought pursuant to 29 U.S.C. § 1132(a), in order to secure disability benefits due to Plaintiff through the law firm Carr Allison's Accidental Death and Dismemberment welfare benefit plan ("The Plan").

2.  The Plan benefit Plaintiff seeks is a $150,000 death benefit payable to her as the widow of the late Justin Parsons and beneficiary to his Accidental Death policy.

3.  Plaintiff seeks this benefit stemming from the death of her husband, Carr Allison attorney Justin Parsons, on March 31, 2016, when his vehicle left the roadway and collided with a tree, fatally injuring Mr. Parsons.

## JURISDICTION

4.  Jurisdiction is appropriate under 28 U.S.C. § 1331 in that 29 U.S.C. § 1132(e) confers jurisdiction upon the district courts of the United States where, as here, Plaintiff's claim relates to an "employee welfare benefit plan" and/or an "employee pension plan" as those terms are defined within 29 U.S.C. § 1001, et. seq. The Plan "may be found" within this district.

5. Jurisdiction is further appropriate under 28 U.S.C. § 1332 in that the matter in controversy exceeds the sum of $75,000, exclusive of interest and costs, and diversity of citizenship exists between the parties.

6. Venue is appropriate in this District Court pursuant to 29 U.S.C. § 1132(e)(2), in that the employee welfare benefit plan at issue was at least partly administered in this District, the breaches of duty alleged herein occurred in this District, and the Defendant may be found or resides in this District and, pursuant to 28 U.S.C. § 1391(b), in that the cause of action arose in this District.

## PARTIES

7. As of the filing of this Complaint, Plaintiff Amy Parsons is an Alabama resident and citizen, as was her husband before his death.

8. Defendant Life Insurance Company of North America is a foreign corporation that does business by agent or otherwise in all counties in Alabama.

9. LINA is a "fiduciary" of The Plan as that term is defined by 29 U.S.C. § 1002(21).

10. LINA's designated agent for service of process is: CT Corporation System, 2 North Jackson Street, Suite 605, Montgomery, Alabama 36104.

11. LINA is an entity exercising authority or control respecting the management or disposition of The Plan assets or the personnel exercising said authority over The Plan assets.

12. LINA is an entity providing services to The Plan at issue.

13. LINA is an entity meeting ERISA's definition of a "party in interest" in this case as that term is defined by 29 U.S.C. § 1002(14).

## THE PLAN

14. Upon information and belief, Carr Allison's Accidental Death & Dismemberment Plan at issue was funded in its entirety by an accidental death policy sold by LINA, the company which also underwrote the policy.

15. This accidental death policy was purchased by Plaintiff's husband, who was employed by the plan sponsor Carr Allison, the purpose of conferring a benefit upon Plaintiff's husband and other employees and their beneficiaries like Plaintiff Amy Parsons.

16. As a result, this policy qualifies as an employee welfare benefit plan as defined in 29 U.S.C. § 1002(1), and Plaintiff qualifies as a participant and/or beneficiary under The Plan as that term is used in 29 U.S.C. § 1132.

17. Under the terms of The Plan providing for an accidental death benefit, the manner of death sustained by participant Justin Parsons, Plaintiff's late husband, was an "accident" as defined by the Plan.

18. Further, the "accident" resulting in Plaintiff's husband's death is not subject to any proven policy exclusions, including a policy exclusion for death caused by or resulting from disease or sickness.

19.     There are no Plan documents indicating that LINA has an enforceable grant of discretionary authority as Plan or Claims Administrator or that any express delegation has occurred.

## LINA'S LIABILITY

20.     Decedent and plan participant Justin Parsons enrolled in Carr Allison's AD&D plan intending that the $150,000 benefit it offered in the event he unexpectedly was killed or incapacitated in an accident so that his wife Amy Parsons (Plaintiff in this action) and his growing family would be financially protected. This was to be part of his legacy to his wife and two small daughters, Perry born on August 8, 2013, and Palmer born on February 25, 2016, just under five weeks before his accident.

21.     On March 31, 2016, Justin was killed in single-vehicle accident when his car was seen veering off the road then down a steep embankment before striking a tree on the driver's side.

22.     It is unknown what precipitated Justin's accident or why his vehicle left the roadway.

23.     There were no passengers with Justin to tell what happened, and no one was in position to observe Justin himself while his truck left the road; there is only a witness who had been behind him who saw that Justin's truck wandered off the road without its brakes lights having been activated.

24.　Justin's widow, Plaintiff Amy Parsons, thereafter applied for the $150,000 death benefit provided under her late husband's plan with the Carr Allison law firm.

25.　On August 15, 2016, LINA denied her claim, arguing to Mrs. Parsons that Justin's death was "contributed to by disease, Sickness" and therefore subject to a policy exclusion for such occurrences. The exclusion cited by LINA in its denial letter was as follows:

> The Carr Allison, Howard, Oliver & Sisson, P.C. policy SOK 601000 states:
>
> **"GENERAL DEFINITIONS**
>
> **Covered Accident**
> A sudden, unforeseeable, external event that results, directly and independently of all other causes, in a Covered Injury or Covered Loss and meets all of the following conditions:
>     1. occurs while the Covered Person is insured under this Policy;
>     2. is not contributed to by disease, Sickness, mental or bodily infirmity;
>     3. is not otherwise excluded under the terms of this Policy.
>
> **COMMON EXCLUSIONS**
>
> In addition to any benefit-specific exclusions, benefits will not be paid for any Covered Injury or Covered Loss which, directly or indirectly, in whole or in part, is caused by or results from any of the following unless coverage is specifically provided for by name in the Description of Benefits Section:
>
> 7. Sickness, disease, bodily or mental infirmity, bacterial or viral infection or medical or surgical treatment thereof, except for any bacterial infection resulting from an accidental external cut or wound or accidental ingestion of contaminated food."

26.　LINA contended Justin's death, albeit an accident, resulted from a "pre-existing and uncontrolled seizure disorder."

27.　In this decision, LINA wrongfully and without a reasonable basis concluded as *fact* that a seizure led to Justin's death because he had experienced five seizures previously, albeit only remotely and over an approximate nine-year period. But there were no witnesses who actually saw Justin having this presumed

seizure; there was only a witness to the accident itself who saw Justin leave the roadway where an embankment sent his car sideways into a tree.

28. LINA conducted no investigation into other causes and did not seek an autopsy or perform any other inquiry other than to rely on eye witness accounts describing Justin's vehicle as it left the road.

29. For example, LINA never considered or investigated other potential causes, including specifically Justin having nodded off due to a combination of him having been taking care of a newborn baby throughout each night of the previous five weeks, sedative effects of the medication that had *successfully* treated his seizure condition, and his intensive work schedule as a litigator with his law firm.

30. LINA further did not engage in a fair interpretation of the applicable policy language.

31. Plaintiff appealed LINA's denial, pointing out that under Alabama law controlling the interpretation of the policy at issue, it is the insurer's burden to prove exceptions to coverage, and because LINA could do nothing more than hazard a guess as to why the accident occurred, it could not and cannot prove the applicability of the exception it now advances.

32. Before LINA, however, was evidence showing it was more likely than not given the circumstances that the accident was actually caused by Justin having fallen asleep while driving and left the roadway in that slumber, and was thereafter

unable to regain control of his vehicle as it bounced violently over a short distance of roadside country landscape until it collided with a tree.

33. LINA nevertheless denied the appeal based on a review it procured from vendor consultant Dr. Hayes of Medical Consultants Network, contending this time that not only did the event fall under the same exclusion, but incredibly questioning now whether it was even an accident in the first place.

34. Being uncertain how LINA's reviewer could possibly conclude his guess to be entitled to more weight than any other guess as to how Justin's accident unfolded, Plaintiff, through undersigned counsel, sought to obtain answers to four questions to Dr. Hayes. Those questions included the following:

1. Are you a board-certified neurologist?

2. How many patients with seizure disorders have you treated within the past 5 years?

3. In your attached opinion, you opine "Mr. Parsons' epilepsy was the underlying cause of the motor vehicle accident" and further that it "seems unlikely" that Mr. Parsons's accident was the result of drowsiness caused by having been awake most of the night before the accident taking care of a newborn baby, among other factors. Is it your opinion to an absolute certainty that Mr. Parsons's accident was not caused by drowsiness and/or falling asleep at the wheel?

4. Your opinion does not explain why the scenario you provided to Cigna is a more probable cause of Mr. Parson's accident and does not cite to any statements from witnesses indicating anything other than Mr. Parsons's having been traveling in the passing lane at a steady speed -- without indication by the witness that he increased speed to pass a vehicle -- and then

> drifting off the roadway to the right (with no use of his turn signal having been reported). Given this fact related by the only witness to the events surrounding Mr. Parsons's accident, please explain why you believe why you believe the scenario you provided to Cigna is a more probable cause of Mr. Parson's accident than Mr. Parsons having fallen asleep while driving in the left lane?

(February 7, 2017 Letter to John Hayes, M.D., of the Medical Consultants Network.)

35. In posing these questions, Plaintiff offered to compensate Dr. Hayes on the same terms he was compensated by LINA for his time.

36. The following day, Plaintiff, through counsel, also routed a similar request for information to LINA seeking the following:

> 1. Please provide a copy of Cigna's agreement with MCN and/or Dr. Hayes relating to the attached opinion Cigna requested in evaluating Mrs. Parsons's appeal.
>
> 2. Please provide all records of charges presented by MCN and/or Dr. Hayes for the opinion Cigna has procured, together will records of all payments made.
>
> 3. Please provide a copy of Dr. Hayes's CV.
>
> 4. Please provide all drafts, notes and emails exchanged by or between Dr. Hayes, MCN and/or Cigna.

(February 8, 2017 Letter to "Mike J.", Cigna Group Insurance Appeals Team).

37. Plaintiff further informed Cigna of the questions sent to Dr. Hayes, requesting LINA's assistance as her fiduciary in obtaining answers from its vendor consultant.

38. Plaintiff's requests fell on deaf ears.

39. Plaintiff was informed that none of her questions would be answered and that not even such limited access to Dr. Hayes – through written letters rogatory -- would be given.

40. This revealed this reviewer belonged to LINA, not the claimant, and that this reviewer was working exclusively for the company and the company's financial interests, not for the fair and unbiased review and administration of Amy Parson's claim for her husband's death benefit.

41. Plaintiff appealed a second time through the Plan's terms providing for such, again noting that nothing had changed and specifically that LINA had no evidence upon which it could rely indicating the fact of a seizure having been the cause of Justin's accident.

42. After taking an inordinate amount of time well in excess of the period allowed under the Plan and applicable Department of Labor regulations providing guidelines for decision making, LINA again affirmed the denial.

43. Throughout this process, Plaintiff repeatedly has requested "relevant" documentation from LINA pursuant to 29 C.F.R. § 2560.503-1(h)(2)(iii).

44. In responding to that request, a number of documents were never produced. Documents not produced include:

(a) the claims manual and procedures which governed the administration of Plan benefits;

(b) documents exchanged with or generated in the course of claims administration by entities hired in connection with the administration of Plaintiff's benefits claim;

(c) documents relating to bonus and incentive compensation programs applicable to Plaintiff's claims handlers; and

(d) documents sent to, received by, or created by LINA's legal department in connection with the administration of Plaintiff's claim.

45. The documents LINA has produced so far from Plaintiff's claim file, however, establishes numerous breaches and errors committed by LINA during the course of administering Plaintiff's claim, including:

(a) The targeting of Plaintiff's claim for denial because ERISA governs;

(b) The failure by LINA to take any meaningful measures to insulate its claims process from its inherent conflict under the Supreme Court case *Glenn v. MetLife* and instead allowing its profit motive to influence its claims administration for Plaintiff;

(c) The withholding of relevant documents and information from Plaintiff throughout the claims process and depriving Plaintiff of the ability to obtain a full and fair review of her claim;

(d) Taking an adversarial posture against Plaintiff instead of a fiduciary posture by searching for ways to avoid paying her claim;

(e) Failing to conduct an adequate investigation, and not considering and/or according proper weight to relevant, supportive information;

(f) Failing to adhere to the terms of the Plan, such as those governing the review of adverse benefit determinations and when a decision must be made;

(g) Purposefully limiting and curtailing the review of its consultants and otherwise improperly exerting influence on them to opine against payment of benefits; and

(h) Unreasonably and arbitrarily disallowing Plaintiff the opportunity to "peer review" LINA's consultants, resulting essentially in a one-way medical review process.

46. Despite clear proof that Justin Parson's death was caused by an accident, and the corresponding absence of proof that the accident was subject to

any exclusionary policy language, LINA determined that his widow Amy Parsons and two young children he left behind did not qualify for policy death benefit.

47. As set forth above in connection with LINA's fiduciary breaches, LINA's claim decision was the product of a conflict of interest whereby it allowed its own financial interests to supersede its fiduciary obligations to Plaintiff. Under *Glenn*, this presents an additional reason for application of a *de novo* standard to their claims decision.

48. This conflict of interest further calls into question the credibility of LINA's claims personnel and reviewers.

49. LINA considered the applicability of ERISA before making its decision. This presents an additional reason for application of a *de novo* standard to their claim decision, and to excuse the Plaintiff from further utilization of LINA's claim process.

50. LINA did not provide Plaintiff with a meaningful opportunity for a full and fair review of his claim for benefits as required by 29 U.S.C. § 1133 and 29 C.F.R. 2560.503-1. Among other things, LINA ambushed the Plaintiff with an additional reason for "review" and denial argument in the second and final appeal phase. This is quintessential sandbagging and is an unfair claims administration practice.

51. LINA also failed to follow Plan terms and its internal procedures governing when a review must be completed, and further failed to render a timely decision as to the same.

52. LINA's decision process did not comport with 29 U.S.C. § 1133's requirement that any notice of the denial must contain the specific reasons for such denial, written in a manner calculated to be understood by the participant, and must comport with Department of Labor regulations.

53. Plaintiff has exhausted all Plan remedies even though LINA's failure to adhere to Plan terms or ERISA requirements and regulations did not require it. As such, this case is ripe for judicial review.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Amy Parsons respectfully requests this court find jurisdiction and venue appropriate, and after trial, grant her the following relief:

a. Award Plaintiff the death benefit due under the applicable Plan or policy pursuant to 29 U.S.C. § 1132(a);

b. For a judgment against the Defendant awarding Plaintiff prejudgment interest, costs and expenses, including the reasonable attorney's fee as permitted under 29 U.S.C. § 1132(g)(1);

c. For an order pursuant to 29 U.S.C. § 1132(c) awarding Plaintiff $110 for each day beyond the Defendant's respective due-dates for responding to Plaintiff's ERISA production requests; and

d. Such other relief as may be deemed just and proper.

Respectfully submitted,

*/s/ M. Clayborn Williams*

M. Clayborn Williams
(ASB-9101-A43M)

**The Martin Law Group, LLC**
**Attorneys for Plaintiff**
P.O. Box 20087
Tuscaloosa, AL 35402
T: (205) 343-1771
F: (205) 343-1781
E: clay@erisacase.com
E: david@erisacase.com

**Plaintiff's Address:**

Mrs. Amy Parsons
c/o The Martin Law Group, LLC
P.O. Box 20087
Tuscaloosa, AL 35402-0087

**Defendants' Address:**
Life Insurance Company of North America
c/o CT Corporation System
2 North Jackson Street, Suite 605
Montgomery, AL 36104.